People v. Charles Thomas 516-0407. Are you ready to proceed? Thank you. May it please the court, counsel. I'm Steve Gritton from East Fault, Illinois. In this particular case, this defendant, like many other young black defendants in the system, found himself in the county jail for some several months, forced to consider whether to take the state's offer or take his chances and go to trial. That is until the Madison County Sheriff's Department, quite frankly, dropped the defendant on his head and he was able to successfully pursue a civil case against the county, use the $22,000 or so that he recovered from that suit to post his bail and be released. He didn't change the state's offer. He was still in a situation where he was forced to consider the state's offer or consider taking his chances. As the court is aware, the defendant did, in fact, go to trial. In all candor, I tried the case. Once the case started, I think he received a relatively fair shake. I asked for and received a lesser-included instruction for the offense of reckless discharge of a firearm. The court did not outright reject it. I probably wouldn't change much of anything I did once this case started, once the jury was picked. My main problem in this case, quite frankly, though, is what I identify as argument four in my brief, which is the way the jury was selected in this case. In all candor, I think like so many other defendants in the Fifth District, quite frankly, we have two counties. We have Madison County and we have St. Clair County, where we have a significant African-American population. In all candor, most of the other counties are, quite frankly, Caucasian, 80%, 90% if not more. In those two counties, you have a significant African-American population. Quite frankly, on the social engineering side, we can't force people to live together. A lot of times they want to live in their own communities. A lot of black people in Madison County want to live in Alton, Illinois. A lot of black people in St. Clair County want to live in East St. Louis or West Belleville, where have you. So in this particular case, I think the prosecutor and I do agree on a couple of things with respect to this argument. In the Hollywood case, the court set forth a three-prong test to determine whether or not the jury selection process was unfair. Issue number one, the group alleged to be excluded is a distinctive group in the community. I don't think there's any doubt about that when we're talking about African-Americans in this particular situation. Number two, the representation of this group in vineyards from which jurors are selected is not fair and reasonable in relation to the number of such persons, quote, in the community, unquote. So what is the community? Is it the county? Is it the county of Madison? Is it the county of St. Clair? Is it the city of Alton? Is it the city of Belleville? Because I would respectfully submit, as I have in my brief and as I did at the motion that I filed at the trial court, that while Madison County may be 9%, 10% African-American, the African-American population in Alton, Illinois, is around 25%. Yet in this particular case, as I think I've set forth in my brief, counties which had a much less representation of African-Americans, perhaps 8%, 9%, they were far more heavily represented on a weighted, on a percentage basis, on the juridical in this case. And I think that is, quite frankly, something that this statute does not address. I think in our culture where social justice is becoming more and more of a concern, that the court needs to look at a statute like this and say, does this statute do enough? Could it do more? Could we somehow improve this statute to improve the jury selection process? Again, so many of the defendants are African-American, yet when they face a jury in this particular case where there were 35 or so people, and four in total out of a whole county were African-American, I think it's just unfair for the defendant to have to face that kind of prospect. The third problem is the under-representation is due to systematic exclusion of the group in the jury selection process. The statute that I am addressing in this part of the argument is, in a county with a population of less than 3 million in which a jury administrator or commissioners have been appointed, the jury administrator or commissioners, on adequate duty of their office, and each year thereafter, shall prepare a list of all Illinois driver's licenses. Do a lot of young African-Americans have a driver's license? I don't mean that to be smart outdated. It's a rhetorical question. I apologize. It will drive Illinois identification card holders and Illinois persons with a disability card holders, all claimants for unemployment insurance, and all registered voters of the county to be known as the juror list. I think that we need to ask ourselves as a culture at this point, is that exhaustive enough? I will submit that in this particular case, we have a public aid office, and we have several public aid offices as a county. Several persons receive public assistance, whether it's food stamps, whether it's a medical card, whether it's cash assistance. Now, those people, despite their economic disadvantage, they could still be qualified to vote. Now, do a lot of those people have a driver's license, an Illinois ID card? Do they have a disability? Perhaps. If so, maybe they don't have Social Security. Maybe that's another source of something we could look at, people who receive cash assistance. I would also point out that in all of Illinois, the city requires you to have an occupancy permit before you can sign up for a house or either rent a house or buy a house in that city. You have to have an occupancy permit. So are you arguing, in order for your client to receive a fair trial, and for clients from Alton, for example, that the jury pool should be required to be from, and this court should show fine, that the jury pool should be required to be from Alton and not the county as a whole? No, I think it should be weighted more carefully than what it is right now. When you've got a city, Alton is, I think, the largest city in Madison County. It's got close to 30,000 people in it, and 25% of that city is African American. Now, when you've got cities, according to my affidavit or my motion, that are substantially smaller, maybe 10,000, 12,000, 15,000, and you've got more people from those cities, from Glen Carver, from Troy, that are, quite frankly, predominantly Caucasian, when you've got more people on that jury list than you've got from Alton, in my opinion, something's wrong. Something's terribly wrong. Why would a city like Glen Carver, that's maybe half the size of Alton, have twice as many people on the jury list than Alton would? This is almost like a voter ID argument at the legislature. Now, when you say jury list, do you mean all the names? I thought they had a lottery thing where they draw out of a barrel type thing. Do they put all the names of every possible juror in Madison County in at one time, and is that how they draw? That is what I understand. Yes, that is what I understand. But in a case like this, where you've got 35 jurors potential, again, it's a rhetorical question, why would 31 of them be African American? That might be just how they came out of the barrel, as they say, out of the barrel, right? Presumably, but if they're only using, my argument would be if they're only using things like an Illinois driver's license, Illinois ID card, Illinois persons with a disability card, all claims for unemployment insurance, and all registered voters of the county, what's going in the barrel is the problem. So then they should take, you're arguing that they should take all those possible names and then make sure they don't have doubles and triples and stuff. Like one might be receiving more than one. Yes, sir. Is that what you're saying? Yes, sir. And I think they should expand that list to include persons who don't have the same economic advantages of, say, a person with a driver's license or an ID card. Again, as I mentioned a few moments ago, people who receive cash assistance or a medical card or food stamps, people who may be living on the working poor, if you will, who've done all they can do to get an apartment in a city like Alton, Illinois, they've got an occupancy permit. Maybe they're not on the voter registration list. Maybe they depend on public transportation. They're depending on the census, basically. I think you're exactly right. I think the census does more than this statute. That's not what you're arguing. Yes, I think a census taker is going to work harder to find people than a jury commissioner. And a jury commissioner is dealing with a case like this where a guy gets 22 1⁄2 years in prison. A census taker is not that federal funding and matching grants and what have you aren't important, but a census taker, I think he's working harder. He's getting more information. He's finding more people. Do you know of any other place in Illinois that this is done? No, sir, I do not. Any state in which this is done? Your Honor, I have read some articles. I can't point to the specific state, but I think this argument is hand-in-hand and part and parcel with what we're seeing, more of a social justice type of argument, like I said a few moments ago. I think that the courts and the legislature need to possibly take a look at this statute and say, is it sufficient? Is it enough? Can we expand on this? I mean, I'm not saying we need to beat ourselves up over it, but it's like anything else, can it somehow be improved upon to make sure that African Americans receive a more fair and just result in the system? Again, I think this particular issue is germane, in this part of the state anyway, to two counties, Madison and St. Clair. I don't think you're going to run across this problem in a lot of other counties, quite frankly, although, again, I can't rule out that an African American defendant in a more rural county is going to look at a jury pool and see no blacks. Let's take it one step forward. Can't you see coming down the line, based on your argument, Hispanic? And then the question is citizen or non-citizen. Now, are you arguing citizen only? You know, in this particular case, I'm arguing on behalf of my client, who's a young African American. Oh, I know what you're arguing. You need to figure it out. I think that in that instance that, yes, we're going to have to consider non-citizens because, again, we pride ourselves on affording people the best justice system in the world, better than Mexico, better than most places in Europe, better than Canada, and I think that, again, we have to consider that. It's a fact of life, socioeconomic or otherwise, that people of different races seem to find themselves more in the system, yet, again, in this particular case, the jury pool, I think, did not reflect the defendant or his background in Alton. So if there are no further questions, again, I tried the case. Once the case started, quite frankly, I felt he got a very first shake, but my problem was the selection of the jury. Thank you. Thank you, counsel. Good afternoon, Your Honor. Please support, counsel. For the record, my name is Patrick Daly. I'm here on behalf of the people of the state of Illinois. I, too, will start arguing for this, as counsel does as well. Admittedly, I'm a little bit at a loss of what the argument is. Is it an argument that this particular panel was improperly chosen, or is it the procedure that's generally used to choose a jury improper? I don't see an argument that what was done here violated law, local, state, whatever. I don't see an argument that the procedure is unconstitutional, nor was one raised. In fact, I would note, so parenthetically, that there was a hearing on defendant's motion, but that hearing was not part of the record on appeal. So we don't know. The only reference to it comes at the post-trial motion hearing, so we don't have a complete record either exactly what was even being presented. At the time that this particular challenge was being raised, the defendant presented a number of statistics to the court showing the respective racial compositions of various communities within Madison County. I think attempting to draw the argument that, you know, we have a certain percentage of people coming from particular communities, then the racial composition will be more white than African American, and therefore, you know, the process here did not provide for a fair cross-representation of the community. The problem is that we don't know, well, the problem is this. When we have an argument where there is a claim that there's not a proper cross-section of the community that's being part of the jury panel, the Supreme Court has identified a three-part test. Whether the group excluded is distinctive, whether it's not fair and reasonable relationships with a number of persons in the community. Excuse me. I think the important third factor, the thirduring factor, is that this under-representation is due to, quote, systematic exclusion in the jury selection process. And this is, you know, I think purposely a fairly high burden that's placed upon people seeking to discharge jury panels on the basis of systematic exclusion. The burden is on them to show that there is a systematic exclusion, and that simply is just not existing in this case. Nor do I hear a defendant even really arguing that here, that there is a systematic exclusion. Rather, it's sort of ingrained into the process. But ingrained into the process is not systematic. Systematic is where there's a selective process going on to ensure that certain numbers of racial compositions are not going to be part of the jury panel. The Holden case, I think, is probably right on point when it says that when the defendant has this burden of establishing an unfair cross-representation, a cross-section of the community argument, that there has to be a showing greater than this is just simply more than a product of pure chance. We don't have a transcript of the hearing. We don't even have a transcript of the voir dire. There's not even really a clear indication of the record what the jury, what the racial composition was of the veneer in this case. There's some reference to being four black individuals in a group of 35, and this doesn't seem to be a fair number. But again, this is more of a reference than an establishment of a fact. And so, you know, there's sort of a two-pronged problem here for the defendant. Number one, as the appellant, he's got the burden to provide a complete record of appeal, which he's failed to do. And number two, even granting the defendant the benefit of every inference that he could draw from an incomplete record, it still doesn't show that there's an error that occurred here in this jury selection process because there's just nothing in this record to show that there was, quote, a systematic exclusion in the jury selection process. So defending that thing, the defense counsel makes, I think, a well-articulated policy argument, but we're not here to discuss policy. We're here to discuss whether this defendant was denied a fair trial. Could this be handled as a plain error? Is that the only way you think? Or could it be handled as a plain error? I don't think it's even a plain error, Justice Walsh, because I think in a situation where there's an incomplete record, the presumption is that the court acted correctly. So it's not a matter of a forfeiture that we have here. It's simply that if the appellant doesn't provide a complete record, then the presumptions fall in favor of the court's rulings and not to the contrary. So, no, I don't see this particularly as a plain error type argument. But nonetheless. Well, I mean, would it have to be presented as a plain error to be argued? I'm sorry? Would it have to be presented as a plain error to be argued? From an appellant perspective? Yes. I'm not sure how that would be possible because I think, again, we're dealing with the apples and oranges type of analysis here. The defendant did raise this below. Okay? There was a motion. There was a hearing. It was raised in the post-trial motion. The point is that in between A and C, that hearing doesn't appear in the transcript, and when we're talking about whether the court amuses discretion, we have no reference point for this court to determine whether that discretion is actually used. So I think it's a more fundamental problem from the defendant's perspective in that if they don't satisfy their record burden, this court has to presume the court acted correctly. And, again, there's nothing in the record to show that there was a systematic exclusion. If something could have been presented during the course of that hearing, I don't know. Maybe we'd be having a different discussion. I don't know. But there isn't, nor has that even really been argued here. So this court almost has to presume that the court acted correctly in denying the defendant's motion. Did I hear you say that there were four African-Americans out of 35? There was, I believe, a statement made to that effect during the post-trial motion hearing. Okay. So Vardir wasn't in the record? Vardir's not in the record. And that's over 10%, isn't it? It would be, correct. So is the population of Madison County more than 10% African-American? That I'm afraid I don't know the answer to. I believe counsel cited some statistics in his brief. So maybe he can answer that question. Right. And I think, again, I think the gist of the defendant's argument is that you have communities that are predominantly white. You're going to have communities that are predominantly going to be African-American or some other minority group. In fact, the panel that was being drawn in from a community standpoint were coming from predominantly whiter communities. But, again, that still doesn't establish anything as far as the jurisdiction. The statute requires a county panel, doesn't it? Correct. Not a city panel. It's a county-wide panel, correct. And if I understand the defendant's argument correctly, that that panel was drawn by a random selection process on the basis of certain information, like voter registration or driver's license, things of that nature. I'm not completely familiar with the statutory scheme, but I think the argument is that that scheme is not fairly constructed to draw minorities who may not fall within the ambit of those roles. And, again, that's an interesting policy argument, but it doesn't show that there's error in this case. It would be more of an interesting question if we were sitting here at the legislature. Exactly. But you're voting for a different office. So I'll be an alternate. So we would ask this court to – I would ask this court to sit down to my arguments in this case, and my brief on the strength of the arguments, unless this court has any questions on those. And, therefore, I would respectfully ask this court to confirm the judgment in the sentence below. Thank you. Thank you. Roberto? Sir, could you answer the question that Justice Moore asked about the percentage in up Madison County that is minority? You know, when I researched that motion, I used the data from the 2010 census, and the county as a whole appears to be about 9 to 10 percent African American. However, with this caveat, the population in the city of Alton is 25 percent African American. A lot of towns within the county, some of the bigger towns, I believe Edwardsville, Granite City, Collinsville, are 7, 8, 9 percent, as I recall. But then some of the other towns, the more rural towns, are less than 5 percent. So it seems like the bulk of that 10 percent of the African Americans in Madison County are accounted for by the population of African Americans in Alton, Illinois. I would also state my apologies to the court and counsel. I looked for the hearing. Once I got his brief, I tried to check for the record on that. I will diligently, as an officer of the court, again try to find that. There are a lot of stenographers in Madison County. There's one supervisor. We've had some turnover. I will certainly try to see if I can locate that and would file a motion at that time. I don't want to delay these proceedings, of course. But again, my argument was that I think the court was essentially denying my motion to have a further evidentiary hearing on how the cards would go into the barrel that the court mentioned a moment ago. It's almost like a sort of a second-stage post-conviction, if you will. Do we get past the first stage and have a second-stage hearing? Well, then I have one more problem. You mentioned different cities, but what about the unincorporated areas? How did that get violated? Did it get violated at all? In your calculations. Other than what I saw in the county, the answer would be no, sir. No, sir. But as an officer of the court, I would say that most of the unincorporated areas of the county are what I would call the eastern demographic, and Alton is on the far west side of the county on the river. And I thank you if there are no further questions. Okay. Thank you. Let me just do this one final question on the math. My question about the 10% before out 35 is more than 10%, correct? Yes, sir. And even if we were to accept at face value your argument, then you did have a pool of more than 10% when you represent to us that the population of Madison County is less than 10% African-American. I would have to concede your point to a certain degree, Your Honor. But again, I would state as an officer of the court, as a part-time public defender in Madison County who has a private criminal practice as well, most of the African-American defendants are from Alton, Illinois. They're in the system. They're not from Troy. They're not from Glen Carbon. They're not from Highland. They're from Alton, Illinois, where a larger number of African-Americans reside. In this particular case, I would argue that, again, the statute clearly says county. No doubt about it. It doesn't say Alton. It doesn't say where you're from. It says county. The statute says county. But I think in this particular case, my argument would be that what goes into the barrel, as the judge mentioned a moment ago, needs to have more of a weighted effect on what's in Alton. Thank you. Thank you, counsel, for your arguments. The court will take this matter under advisement and render a decision in due course. And that is the final case for today, so the court will go into recess and resume tomorrow morning. Thank you.